NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

In re:

LEVEL 8 APPAREL, LLC,

      Debtor.
----------------------------------------------------------------------x

ANGELA TESE-MILNER, as Trustee of the
Estate of Level 8 Apparel, LLC, Debtor,

      Plaintiff,

-against-

CAPSTONE CREDIT, LLC and
CAPSTONE CAPITAL GROUP, LLC,

      Defendants.
----------------------------------------------------------------------x

Chapter 7

Case No. 16-13164 (JLG)

Adv. Pro. No. 20-1208 (JLG)

## MEMORANDUM DECISION AND ORDER
## ON DEFENDANTS CAPSTONE CREDIT, LLC'S AND CAPSTONE
## CAPITAL GROUP, LLC'S MOTION TO DISMISS ADVERSARY PROCEEDING

**APPEARANCES:**

LAW OFFICE OF WILLIAM F. MACREERY
7 Granite Springs Road
Granite Springs, New York 10527
By:    William F. Macreery

-and-

The Law Firm of Tese & Milner
735 Wickham Avenue, P.O. Box 35
Mattituck, New York 11952
By:    Angela Tese-Milner

*Counsel for the Plaintiff-Trustee*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
By:    Tracy L. Klestadt
By:    Andrew C. Brown

*Counsel for Capstone Credit, LLC and Capstone Capital Group, LLC*

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, New York 10014
By:    Greg M. Zipes

*Office of the United States Trustee*

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

<u>INTRODUCTION</u>

Angela Tese-Milner is the chapter 7 trustee (the "Trustee") of the estate of Level 8

Apparel LLC (the "Debtor" or "Level 8") in this converted chapter 11 case.  In this adversary

proceeding she is seeking to avoid and recover certain alleged illegal, unauthorized, and

fraudulent post-petition transfers and misappropriations of property of the Debtor's estate.  The

Trustee's complaint (the "Complaint") names defendants Capstone Capital Group LLC

("Capstone Capital") and Capstone Credit, LLC ("Capstone Credit," and together with Capstone

Capital, the "Defendants").  *See* Complaint ¶¶ 1-3 [ECF No. 1].[1]

The Complaint contains five claims for relief (the "Counts")[2] alleged against one or both

of the Defendants.  Without limitation, and in broad strokes, the Counts include claims to avoid

the filing of a post-petition financing statement and to avoid and recover assignments of certain

accounts receivable under state law, as well as claims against both Defendants for aiding and

abetting the same.  The matter before the Court is the Defendants' motion to dismiss those

Counts alternatively, under the Prior Pending Action Doctrine, or pursuant to Rule 12(b)(6)

("Rule 12(b)(6)") of the Federal Rules of Civil Procedure (the "Motion").[3]  The Trustee opposes

the Motion (the "Opposition"),[4] and the Defendants have filed a reply to the Opposition

---

[1]     Citations to "ECF No. ___" refer to documents filed on the electronic docket of the instant Adversary
Proceeding (No. 20-1208).  Documents filed in the Debtor's main bankruptcy case or other cases will have the
appropriate "Case No." designation before the "ECF No.___" reference.

[2]     The Counts are also referred to herein as the "Claims for Relief."

[3]     *See Memorandum of Law in Support of Defendants Capstone Credit, LLC's and Capstone Capital Group,
LLC's Motion to Dismiss Adversary Proceeding* [EFC No. 5].  Rules 7009 and 7012 of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules") make Rules 9(b) and 12(b)(6), respectively, applicable herein.

[4]     *See Trustee's Memorandum of Law in Opposition to the Motion to Dismiss the Adversary Proceeding*
[ECF No. 13].

(the "Reply").[5]  The United States Trustee (the "UST") filed a limited response to the Reply

(the "UST Response"), and the Defendants filed an affidavit regarding the UST Response

(the "Klestadt Declaration").[6]  On January 11, 2021, the Trustee filed a letter regarding certain

matters addressed in the Motion and the Reply [ECF No. 24] (the "Surreply").  For the reasons

set forth, the Motion is granted in part and denied in part.

## JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C §§ 1334(a) and 157(a)

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(E), (K), and (O).

## FACTS[7]

### Background

Level 8 was formed in 2009 by Bon Seung Kim ("Sam Kim") and others to engage in the

business of designing, producing samples for buyers, sourcing, arranging manufacturing,

importing and selling men's and women's apparel and outwear under licensed trademarks and

private labels for large retailers.  *See* Complaint ¶ 9.  Sam Kim and other members of his family

---

[5]  *Reply Memorandum of Law in Further Support of Defendants Capstone Credit, LLC's and Capstone Capital Group, LLC's Motion to Dismiss Adversary Proceeding* [ECF No. 16].

[6]  *Limited Response of the United States Trustee to Capstone's Reply in Support of its Motion to Dismiss* [ECF No. 20]; *Declaration of Tracy L. Klestadt in Reply to the Limited Response of the United States Trustee to Capstone Credit, LLC's and Capstone Capital Group, LLC's Reply in Support of Thier* [sic] *Motion to Dismiss* [ECF No. 21].

[7]  The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the Complaint.  Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.").

also controlled two other companies—On Five Corporation ("On Five") and Liaison Apparel Corporation ("Liaison Apparel")—which the Trustee contends were formed before (On Five) and after (Liaison Apparel) the Debtor commenced its bankruptcy case to conduct the same business as the Debtor for the purpose of misappropriating and siphoning the Debtor's assets to avoid paying the Debtor's creditors. *See id.* As of the Petition Date (defined below), Level 8 and Sam Kim were defendants in two lawsuits: (1) an action entitled *Stuart's LLC* ("Stuart's") *and Wayne Galvin* ("Galvin") *vs. Level 8, Sam Kim*, *et al.*, Index No. 012560/2009, in Supreme Court Nassau County (the "Stuart's-Galvin Action"); and (2) an action entitled *Weihai Textile Group Import & Export Co., Ltd. ("Weihai") vs. Level 8, Sam Kim, et al.*, Index No. 11 civ. 4405 (the "Weihai Action") in the United States District Court for the Southern District of New York. *See id.* ¶ 10. The Stuart's-Galvin Action resulted in judgment against the Debtor, Sam Kim, and others totaling $2,596,558.77, for, among other things, tortious interference with contracts, unfair competition and breach of fiduciary duty (the "Stuart's-Galvin Judgment"). *Id.* The Weihai Action resulted in judgment against Level 8 in the amount of $1,951,777.00. *Id.*

As part of its business, the Debtor was a party to several contracts with Capstone Capital, including a Sales Representative Agreement dated as of October 29, 2015 (the "Sales Representative Agreement"). *See id.* ¶ 11. Together, the Debtor and Capstone Capital transacted business with Costco pursuant to certain written agreements, including the (i) Costco Wholesale Global Import Supplier Agreement dated as of October 14, 2015, (ii) Costco Wholesale Private Label Agreement dated as of October 14, 2015, (iii) Copyright Assignment – Private Label Products dated as of October 20, 2015, and (iv) Costco Wholesale Basic Supplier Agreement (collectively, the "Costco Agreements"). *Id.* ¶ 12. Each Costco Agreement identifies Capstone Capital/Level 8 as the "vendor." *Id.* However, according to the Trustee, Capstone Capital could

3

not have acted as a "vendor" under those agreements because it did not have the expertise to conceive and design seasonal lines of garments, to create samples, to procure orders for garments by store buyers, to arrange and oversee manufacturing of garments by companies in China and Vietnam, and to arrange for timely production and shipment of goods to customers that were all part of the lengthy sales process. *See id.* ¶ 14.  She contends that it could not have succeeded as a seller of goods without the assistance of Level 8, because at all material times the Debtor, not Capstone Capital, performed all of the work associated with the design, off-shore manufacturing, production, shipment, and sale of goods to its customers. *Id.* ¶ 15.  Moreover, she maintains that because the Debtor could manage all of the necessary elements of the lengthy sale process, it could have succeeded as a seller of the goods on its own with conventional factoring. *Id.*

The Chapter 11 Proceedings

On November 14, 2016 (the "Petition Date") Level 8 commenced a voluntary case under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  No statutory committee or examiner was appointed in the Chapter 11 Case, and Level 8 initially operated and controlled its business and assets as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 17, 2016, the Defendants filed a financing statement, Filing No. 201611176358222, with the New York Secretary of State which claimed a security interest in all assets of the Debtor (the "Post-Petition Financing Statement").  *See* Complaint ¶ 34, Exhibit 5.  The filing of the Post-Petition Financing Statement was not done with notice to, or approval from, the Court.

At the outset of the Chapter 11 Case the Debtor made a motion to use cash collateral consisting of the revenues generated under the Sales Representative Agreement, and to grant Capstone Capital and the Internal Revenue Service replacement liens on the Debtor's assets.

Complaint ¶ 16; *see also Debtor in Possession's Emergency Motion for Entry of Order Authorizing (I), on an Interim Basis, Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Payment of Pre-Petition Priority Wages Nunc Pro Tunc to Petition Date Pursuant to 11 U.S.C. §§ 105, 362, 363(B), and 549, and Extending the Time for the Debtor to File Schedules and Statement of Financial Affairs*, Case No. 16-13164 [ECF No. 10] (the "Cash Collateral Motion").[8]   The Court initially granted the Cash Collateral Motion and the replacement liens to Capstone Capital by Order dated December 6, 2016.  *See Emergency Order (I) Authorizing Debtor to Use Cash Collateral, (II) Granting Adequate Protection, and (IV) Granting Certain Related Relief*, Case No. 16-14164 [ECF No. 14].   However, the Court subsequently vacated the replacement lien granted to Capstone Capital because Capstone Capital's lien had lapsed and become unperfected.  *See Order Vacating, in Part, the Emergency Order (I) Authorizing Debtor to Use Cash Collateral, (II) Granting Adequate Protection, and (IV) Granting Certain Related Relief*, Case No. 16-13164 [ECF No. 22].

During the Chapter 11 Case, the Debtor made 61 separate written assignments of the Debtor's accounts receivable owed by Costco totaling $45,365,535.44 to Capstone Credit (collectively, the "Post-Petition Assignments").  Complaint ¶ 18.[9]   In part, the documents evidencing those assignments state that "[p]ursuant to the accounts receivable financing or factoring agreement between us, and in accordance with the provisions, representations and warranties contained therein, we confirm the transfer and assignment to Capstone Credit, LLC of all our right, title and interest in and to the accounts receivable represented by invoices identified

---

[8]    As noted below, in resolving the Motion, the Court can take judicial notice of documents filed of record in this case.

[9]    A summary of the Post-Petition Assignments is annexed to the Complaint as Exhibit 1 together with five of the identical forms of assignment used for all 61 assignments, and additional details for each of these assignments are annexed as Exhibit 2.

above . . . ." *Id.*, Exhibit 1.  The Trustee asserts that no such agreements exist and that Capstone

Capital and Capstone Credit neither sought nor obtained Court approval to conduct out of the

ordinary course of business and financing arrangements with the Debtor pursuant to the Sales

Representative Agreement or the Costco Agreements, as required by Section 364 of the

Bankruptcy Code.  *See id.* ¶¶ 17, 24.

In July of 2018, the UST moved to dismiss or convert the Chapter 11 Case to one under

Chapter 7 because the Debtor had "no reasonable likelihood of rehabilitation" and that "[t]he

March 2018 monthly operating report, the last one filed, shows an ending balance of $2,502.48

in the Debtor Level 8's bank account . . . ."  *See id.* ¶ 19; *Motion to Convert Chapter 11 Case to

Chapter 7, or in the Alternative, Motion to Dismiss Case*, Case No. 16-13164 [ECF No. 116].[10]

On August 22, 2018 (the "Conversion Date"), the Court granted that motion and converted the

Chapter 11 Case to one under Chapter 7 (the "Chapter 7 Case") and on the following day, the

UST appointed the Trustee.  *See* Complaint ¶ 20.  The Debtor's *Final Report of Debtor as

Debtor in Possession Upon Conversion of Chapter 11 Case to Chapter 7 Case Pursuant to

Bankruptcy Rule 1019(5)* showed that the estate was administratively insolvent on the

Conversion Date.  *See id.* ¶ 21.

The Chapter 7 Proceedings

After the Conversion Date, and between August 23, 2018 and September 20, 2018,

the Debtor made seven separate written assignments of the Debtor's accounts receivable from

Costco totaling $6,044,112.35 to Capstone Credit (collectively, the "Post-Conversion

---

[10]    As noted by the UST in his limited response, the UST was not aware until May 2018 that Capstone Capital held the "lucrative" manufacturing contracts, rather than the Debtor.  *See* UST Response, at 4.  This revelation directly led to the UST's motion to convert.  *Id.*  Although the Klestadt Declaration reiterates that all parties were aware of the Sales Representative Agreement, it does not allege that the specific transfers of receivables at issue in this case, or any underlying contracts between Capstone Capital and Costco, were disclosed to the Court.  *See* Klestadt Declaration ¶ 12.

Assignments" and, together with the Post-Petition Assignments, the "Receivables"). *Id.* ¶ 23.[11] As with the Post-Petition Assignments, in part, the documents evidencing those assignments state that "[p]ursuant to the accounts receivable financing or factoring agreement between us, and in accordance with the provisions, representations and warranties contained therein, we confirm the transfer and assignment to Capstone Credit, LLC of all our right, title and interest in and to the accounts receivable represented by invoices identified above . . . ." *Id.*, Exhibit 3.  The Trustee alleges that, contrary to that statement, the Debtor did not have any written agreement with Capstone Credit that was in effect or approved by the Court at the time the Post-Conversion Assignments were executed, and that the Defendants did not give notice or obtain consent from the Trustee or the Court as to the Post-Conversion Assignments. *Id.* ¶ 24-26.  The Trustee maintains that Capstone Credit did not give anything of value to the Debtor for such Post-Conversion Assignments. *Id.* ¶ 27.

<u>The Alleged Insiders' Fraudulent Scheme</u>

The Trustee contends that from the time Sam Kim formed On Five, he, together with his wife Kuk Ja Kim ("Mrs. Kim"), his daughter Bokyoung Kim ("Bokyoung") and other officers, directors and managers of the Debtor, including Frank Spadaro ("Spadaro"), Richard Aloisi ("Aloisi"), Peter Lewis ("Lewis"), Jennifer Senger ("Senger") and Junge Chae (together with Spadaro, Aloisi, Lewis and Senger, the "Key Personnel" and together with Mrs. Kim and Bokyoung, the "Individuals"), engaged in a continuous plan and scheme, both pre- and post-petition, to divert and misappropriate all of the Debtor's assets and business from the Debtor to On Five, and subsequent to the Conversion Date, to Liaison Apparel, all in violation of their fiduciary duties of loyalty and good faith to the Debtor, in the same way that Sam Kim had

---

[11]    A list of the Post-Conversion Assignments is annexed as Exhibit 3 of the Complaint, and additional details for each are annexed as Exhibit 4. *Id.*

had misappropriated Stuart's business by forming Level 8, and diverting that business to Level 8. *See id.* ¶ 28.

The Trustee contends that Sam Kim and the Individuals took the following actions in support of the alleged fraudulent scheme and plans:

(a)     Spadaro and Kim transferred $580,000 in cash from the Debtor to On Five;

(b)     From May 15, 2015 to the Petition Date, Sam Kim and Mrs. Kim withdrew more than $330,000 from Level 8, depleting the Debtor's cash;

(c)     From March of 2016 to the Conversion Date, the Key Personnel secretly worked for On Five, while being paid more than $1,200,000 by the Debtor;

(d)     The Key Personnel misrepresented that On Five was merely a new name for the Debtor, and caused the Debtor's customers to transfer existing orders and new purchase orders from Level 8 to On Five based on those misrepresentations;

(e)     Solely through the efforts of the Debtor, On Five secured purchase orders totaling more than $300,000 from the Debtor's customers for Tahari branded products which On Five had no license to sell;

(f)     Spadaro and Sam Kim negotiated licensing agreements with William Rast Licensing, LLC ("Rast") and Body Glove IP Holdings LP on behalf of On Five rather than Level 8, and in 2017 On Five sold more than $285,000 of Rast branded products to Costco Mexico;

(g)     Between February of 2018 and June of 2019, On Five sold $1,072,995 of Rast branded products to Costco Mexico and assigned the related accounts receivable to Capstone Capital under conventional factoring agreements;

(h)     Aloisi caused purchase orders of more than $300,000 from Lot Less Closeouts, Inc. and The Boeing Company to be transferred from the Debtor to On Five during 2017 and 2018, when both companies had been customers of the Debtor;

(i)     On the day after the Petition Date, Capstone Capital paid $74,396.22 to On Five by a wire transfer to On Five's bank account with Chase ending in number 7175 on November 15, 2016 for the express purpose of funding the Debtor's November 2016 payroll obligation, without notice to or approval of the Court, for employees who were also secretly working for On Five;

(j)     In the Chapter 11 Case, Spadaro and Sam Kim misrepresented the Debtor's financial position to the Court, with Capstone Capital's acquiescence (in that Capstone Capital did not bring this misrepresentation to the Court's attention); and

(k)    After the Conversion Date, the Key Personnel hid their wrongful conduct in the scheme to take over the Debtor's business and opportunities by incorporating Liaison Apparel and changing the name under which business was conducted with Costco and the Defendants.

*Id.* ¶ 29.

The Trustee alleges that Capstone Capital and Capstone Credit knowingly participated in and substantially contributed to the fraudulent misappropriation and conversion of the Debtor's business perpetrated by the Key Personnel by financing the operations of On Five and Liaison Apparel. *Id.* ¶ 30.

The First Adversary Proceeding

On August 20, 2019, the Trustee commenced an adversary proceeding (the "First Adversary Proceeding") against Sam Kim, the Individuals, On Five, Liaison Apparel (such parties, collectively, the "Insiders"), and Capstone Capital. In her complaint (the "First Complaint"), the Trustee included 24 claims for relief, including claims for breaches of fiduciary duty, fraud, malfeasance, misappropriation and conversion of the Debtor's assets and business, unjust enrichment, and fraudulent and preferential transfers.[12] The Trustee named Capstone Capital in nine of those claims for relief. In support of those claims, the Trustee alleged, in part, that Capstone Capital had, among other things, participated in the fraudulent scheme perpetrated by the Insiders, fraudulently transferred and converted the Debtor's assets and business opportunities for itself and/or for the benefit of the Insiders, through the Sales Representative Agreement, and been unjustly enriched by its actions and the actions of the Insiders. Capstone

---

[12]    *See* Case No. 19-1335 [ECF No. 1] (the "First Complaint").

Capital filed a Rule 12(b)(6) motion to dismiss each of the nine claims for relief alleged against

it in the First Complaint.  The Court granted the motion, with leave for the Trustee to replead.[13]

<u>Rule 12(b)(6) Pleading Standards</u>

Under Rule 12(b)(6), a party may seek to dismiss a complaint "for failure to state a claim

for relief upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*")

(citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)

("*Twombly*").  When the complaint contains allegations of intentional fraud, it must also satisfy

the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Under that rule, a plaintiff alleging fraud must state "the circumstances constituting fraud . . .

with particularity."  Fed. R. Civ. P. 9(b).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570.  In

*Iqbal*, the Supreme Court outlined a two-step approach in resolving a motion to dismiss.  First, it

instructed that "a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than [legal] conclusions, are not entitled to the

assumption of truth."  *Iqbal*, 556 U.S. at 679.  That is because "the tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).  Second, "[w]hen there

are well-pleaded factual allegations, a court should assume their veracity and then determine

---

[13]    *See Memorandum Decision and Order on Capstone Capital Group, LLC's Motion to Dismiss Adversary
Proceeding*, Case No. 19-1335 [ECF No. 51].

whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  In

exercising this review, a court's "task is necessarily a limited one.  The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), abrogated on other grounds by

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *accord DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d

104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a

court is merely to assess the legal feasibility of the complaint, not to assay the weight of the

evidence which might be offered in support thereof." (citation and internal quotation marks

omitted)).  In resolving a Rule 12(b)(6) motion, "courts must consider the complaint in its

entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

motions to dismiss, in particular, documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 322 (2007).  For these purposes, "the complaint is deemed to include any written

instrument attached to it as an exhibit or any statements or documents incorporated in it by

reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)

(per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

<u>The Complaint and the Motion</u>

In essence, in her Complaint, the Trustee seeks to:

(i) avoid the Post-Petition Financing Statement under sections 362 and 549 of the
Bankruptcy Code (Count 1, Complaint ¶¶ 31-38);

(ii) avoid and recover the Receivables or their value from the Defendants under sections
362 and 542 and sections 549 and 550 of the Bankruptcy Code (Count 2 – Post-Petition
Assignments, *id.* ¶¶ 39-47, Count 3 – Post-Conversion Assignments, *id.* ¶¶ 48-56);

(iii) recover $51,409,647.79 in damages from Capstone Credit under state law based on
its alleged fraudulent misappropriation and conversion of the Receivables (Count 4,
*id.* ¶¶ 57-60); and

11

(iv) recover $51,409,647.79 in damages from the Defendants under state law based on their alleged aiding and abetting the alleged fraudulent misappropriation and conversion of the Receivables (Count 5, *id.* ¶¶ 61-64).

In support of the Motion, the Defendants assert that the Court should dismiss the Complaint under the "Prior Pending Action Doctrine." *See* Motion at 6-11; Reply at 6. Alternatively, they assert that pursuant to Rule 12(b)(6), the Court should dismiss all or portions of Counts 1, 2, and 4 of the Complaint as barred by applicable statutes of limitation (Motion at 13-15; Reply at 8), and dismiss Counts 2-5 of the Complaint on the grounds that each such claim fails to state a claim upon which this Court can grant the Trustee relief. *See* Motion at 15-19; Reply at 2. The Trustee disputes all those contentions. The Court considers those matters below.

DISCUSSION

**The Prior Pending Action Doctrine**

The Prior Pending Action Doctrine "confers discretionary authority on a federal court to stay or dismiss a suit in order to avoid duplicative litigation." *Wenegieme v. Bayview Loan Servicing*, No. 14 CIV. 9137 RWS, 2015 WL 2151822, at *3 (S.D.N.Y. May 7, 2015) (citing *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir. 2000)); *see also Zigmund v. Foster*, 106 F. Supp. 2d 352, 363 (D. Conn. 2000) ("The prior pending doctrine applies to preclude a second action filed containing the same claim."). The doctrine reflects the general rule that "federal district courts [are] to avoid duplicative litigation." *Lexico Enterprises, Inc. v. Cumberland Farms, Inc.*, 686 F. Supp. 2d 221, 224 (E.D.N.Y. 2010). In determining whether to dismiss or stay an action as duplicative, a court should "consider the equities of the situation when exercising its discretion[,]" as the doctrine is meant to "protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *In re Methyl Tertiary Butyl Ether*

*(MTBE) Prod. Liab. Litig.*, No. 14 CIV. 01014, 2015 WL 6740953, at *3 (S.D.N.Y. Nov. 4, 2015).

As noted previously, the Court has dismissed all counts alleged against Capstone Capital in the First Adversary Proceeding.  Therefore, there is currently no danger of "concurrent litigation over the same subject matter."  Further, and as pointed out by the Trustee, the focus of the Complaint is the alleged assignments of the Receivables "which were never revealed to the Court and the Trustee and were never raised in [the First Complaint]."  Opposition at 4.  In contrast, in the First Complaint, the Trustee sought to avoid the Sale Representative Agreement and recover all payments made to Capstone Capital thereunder, as fraudulent transfers under state and federal law, and to hold Capstone Capital liable for damages based upon its alleged unjust enrichment and aiding and abetting the wrongdoing of the other defendants to the First Complaint.  Therefore, although the two adversary proceedings undoubtedly rely upon many of the same facts, and the Sales Representative Agreement is relevant to both, they address separate causes of action and the Court declines to dismiss the Complaint under the Prior Pending Action doctrine.[14]

**Statutes of Limitation**

In Counts 1 and 2 of the Complaint, the Trustee seeks relief against the Defendants under sections 362 and 549 of the Bankruptcy Code.  Section 362 of the Bankruptcy Code establishes an automatic stay upon the commencement of a bankruptcy case that enjoins third parties from taking, commencing, or continuing actions against the debtor and estate property.  It levels the playing field among creditors by "avoiding wasteful, duplicative, individual actions by creditors seeking individual recoveries from the debtor's estate, and by ensuring an equitable distribution

---

[14]  After and if the Trustee repleads her allegations against Capstone Capital in the First Adversary Proceeding, the Court will address any arguments from the parties regarding the consolidation of the two adversary proceedings.

of the debtor's estate." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 76 (2d Cir. 2019) (citing *In re McMullen*, 386 F.3d 320, 324 (1st Cir. 2004) (noting that section 362(a)(1) of the Bankruptcy Code, among other things, "safeguard[s] the debtor estate from piecemeal dissipation ... ensur[ing] that the assets remain within the exclusive jurisdiction of the bankruptcy court pending their orderly and equitable distribution among the creditors")).  Actions taken in violation of the automatic stay are void *ab initio*.  *See In re Heating Oil Partners, LP*, 422 F. App'x 15, 18 (2d Cir. 2011) (finding that a default judgment violated the stay and so was "void *ab initio*"); *In re Signature Apparel Grp. LLC*, 577 B.R. 54, 88 (Bankr. S.D.N.Y. 2017), *aff'd*, 510 B.R. 113 (B.A.P. 6th Cir. 2014) ("Actions taken in violation of the automatic stay are void.") (citing cases).  By application of section 542 of the Bankruptcy Code, a trustee can recover property from a third party that the party acquired in violation of the automatic stay.  11 U.S.C. § 542; *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) (stating that section 542 of the Bankruptcy Code "requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee").  Thus, the focus of section 362 of the Bankruptcy Code is on actions taken against a debtor or estate property post-petition by third parties.  In contrast, the focus of section 549 of the Bankruptcy Code is on actions taken post-petition by the debtor, in favor of third parties.  It provides that, in appropriate circumstances, a trustee can avoid a debtor's unauthorized post-petition transfer of estate property.  11 U.S.C. § 549(a).  By application of section 550 of the Bankruptcy Code, the trustee can recover avoided post-petition transfers from the transferee.  11 U.S.C. § 550.

Although there is some overlap between sections 362 and 549 of the Bankruptcy Code, as relevant, section 362 provides that the automatic stay under section 362(a) does not stay "any

transfer that is not avoidable under section 544 and that is not avoidable under section 549." *See* 11 U.S.C. § 362(b)(24). Courts have generally found that "no violation of the automatic stay occurs when a debtor voluntarily transfers estate property to a creditor." *See Slone v. Anderson (In re Anderson)*, 511 B.R. 481, 495 (Bankr. S.D. Ohio 2013) (citing *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 574 (9th Cir.1992)); *In re Signature Apparel Grp. LLC*, 577 B.R. at 86 (noting that "section 549 is the exclusive remedy by which post-petition transfers of estate property may be avoided"); *Rathbone v. Lake (In re Consol. Partners Inv. Co.)*, 156 B.R. 982, 985 (Bankr. N.D. Ohio 1993) (same). However, section 362 of the Bankruptcy Code applies to the actions of third parties affecting estate property, even if the debtor acquiesces to such actions. *See In re Signature Apparel Grp. LLC*, 577 B.R. at 86-87 (finding that causes of action were not time bared by section 549 of the Bankruptcy Code when they did not involve debtor-initiated transfers of estate property, even though the debtor acquiesced to defendants' actions). In this light, the Court considers the statute of limitations arguments raised by the Defendants.

Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Accordingly, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir.2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.") (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir.2008)); *Ghartey v. St. John's*

*Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an

action is barred by a statute of limitations, a defendant may raise the affirmative defense in a

pre-answer motion to dismiss.  Such a motion is properly treated as a Rule 12(b)(6) motion to

dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1)

motion to dismiss for lack of jurisdiction over the subject matter.") (citations omitted).  The

Defendants assert that is the case here.  They maintain that on face of the Complaint, Counts 1, 2,

and 4 are barred by statutes of limitation.  The Trustee denies that a statute of limitations bars her

from prosecuting any of those claims for relief.

    First Claim for Relief

       In Count 1, the Trustee seeks a determination that the Post-Petition Financing Statement

is null and void pursuant to sections 362 and 549 of the Bankruptcy Code.  Complaint ¶¶ 31-38.

The Trustee alleges that the Defendants filed the Post-Petition Financing Statement on

November 17, 2016, and did so without Court approval.  *Id.* ¶ 34-35.  The Defendants contend

that the Court should dismiss the claim because the Trustee commenced this adversary

proceeding more than two years after the Defendants filed the financing statement and, as such,

the Trustee is barred by the two-year limitations period under section 549(d) of the Bankruptcy

Code from obtaining relief under section 549.  *See* 11 U.S.C. § 549(d) ("An action or proceeding

under this section may not be commenced after the earlier of—(1) two years after the date of the

transfer sought to be avoided; or (2) the time the case is closed or dismissed.").  However, in

making this argument, the Defendants do not account for the fact that in support of Count 1, the

Trustee alleges that the Defendants, not the Debtor, filed the Post-Petition Financing Statement,

and that the Trustee also seeks relief under section 362 of the Bankruptcy Code.  Section 549 of

the Bankruptcy Code plainly has no application to Count 1, but section 362 does, and the

Defendants do not contend otherwise.  Stay relief motions are not subject to statutes of

limitations.  *See In re Signature Apparel Grp. LLC*, 577 B.R. at 86-87 (finding that section 362

of the Bankruptcy Code applied to actions of third parties, even when the debtor "acquiesced" to

such actions, and therefore plaintiff was not time-barred by section 549 of the Bankruptcy Code).

Accordingly, the Court denies Capstone's motion to dismiss the First Claim for Relief on statute

of limitations grounds.

<u>Second Claim for Relief</u>

In the Second Claim for Relief, the Trustee seeks to avoid and recover the Post-Petition

Assignments either as unauthorized post-petition asset transfers under sections 549 and 550 of

the Bankruptcy Code, or as transfers made in violation of the automatic stay under sections 362

and 542 of the Bankruptcy Code.  As referenced in the Complaint, all but one of the

Post-Petition Assignments were made more than two years prior to the commencement of this

action.  *See* Complaint, Exhibit 1 (listing the dates of each of the Post-Petition Assignments).

Accordingly, the Defendants contend that the Trustee's claim to recover the receivables is

time-barred under section 549(d) of the Bankruptcy Code for all but the last account receivable

(in the sum of $1,182,425.93).  Motion at 14.

The Trustee disputes that contention.  First, she asserts that by accepting the Post-Petition

Assignments, Capstone Credit attempted to "obtain possession and/or exercise control over

property of the estate" in violation of the automatic stay.  Objection at 10.  She maintains that the

assignments are void under section 362(a)(3) of the Bankruptcy Code and, as such, she can

recover them pursuant to section 542(a) of the Bankruptcy Code.[15]  *Id.*  The Court finds no merit

---

[15]    Section 362(a)(3) of the Bankruptcy Code provides that the filing of a petition operates as a stay of "any act to
obtain possession of property of the estate or of property from the estate or to exercise control over property of the
estate."  11 U.S.C. § 362(a)(3).  Section 542(a) of the Bankruptcy Code states that "an entity, other than a custodian,
in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section

in that argument.  The Trustee alleges that the Debtor, not Capstone Capital, made the Post-Petition Assignments at issue in Count 2.  As such, as a matter of law, the Trustee cannot state a claim against Capstone Capital under section 362 of the Bankruptcy Code because she "must use 11 U.S.C. § 549, rather than 11 U.S.C. § 362, to recover estate property that the debtor voluntarily transfers after the bankruptcy filing."  *In re Anderson*, 511 B.R. at 495; *see also In re Signature Apparel Grp. LLC*, 577 B.R. at 86-87 (section 362 of the Bankruptcy Code, not section 549, applies to actions of third parties, even when the debtor "acquiesces" to such actions).

Alternatively, the Trustee contends that the two-year limitations period does not impact her claims at all, because the Post-Petition Assignments were part of a continuous and wrongful course of conduct by Capstone Credit and, as such, the limitations period was tolled until the commission of the last wrongful act.  *See* Objection at 9-10.  The Defendants dispute that position on the grounds that the accounts receivable at issue in the Post-Petition Assignments were not estate property, and, in any event, the Trustee has not alleged facts demonstrating that the Defendants engaged in a "continuous and wrongful course of conduct" with regard to such assignments.  *Id.*  The Court finds no merit in either argument.  As explained below, the Court finds that the Defendants have not alleged facts demonstrating, as a matter of law, that the Defendants owned the Receivables at issue herein.  As applicable to this case, "[t]he § 549(d) statute of limitation may be tolled using the doctrine of equitable tolling when, through active or passive concealment, the Trustee does not learn of the critical facts needed to file a timely avoidance action. . . . Consequently, the statute of limitation may be tolled in this case if the Trustee was unable to discover the assets and avoidable transfers in time to file a timely action

---

363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).

due to concealment of the underlying facts by the Debtors." *In re Anderson*, 511 B.R. at 498

(citations omitted); *see also In re Liberty Brands, LLC*, 476 B.R. 443, 450 (Bankr. D. Del. 2012)

(in examining section 549 of the Bankruptcy Code, finding that "[e]quitable tolling of a statute of

limitations is appropriate where one of three conditions is met: '(1) the defendant has actively

misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some

extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has

timely asserted his or her rights mistakenly in the wrong forum'") (citations omitted).  The

Trustee has alleged that the Debtor made the transfers without Court approval and that they were

"secretly accept[ed]" by Capstone Credit.  *See* Complaint, ¶¶ 40-43.  At least in the context of a

motion to dismiss, this is sufficient to allege that "through active or passive concealment . . . the

Trustee was unable to discover the assets and avoidable transfers in time to file a timely action."

*In re Anderson*, 511 B.R. at 498.  As a consequence, the Trustee has adequately alleged facts that

support equitable tolling of the two-year statute of limitations in section 549 of the Bankruptcy

Code.  As such, and to that extent, the Court denies the Defendants' motion to dismiss the

Second Claim for Relief as time-barred.

Fourth Claim for Relief

In the Fourth Claim for Relief, the Trustee seeks to recover a money judgement against

Capstone Credit in the sum of $51,409,647.79, based upon its alleged fraudulent

misappropriation and/or conversion of the Receivables under New York state law.  Complaint

¶¶ 57-60.  Capstone Credit argues that the claim is time-barred, in part, as exceeding the

three-year statute of limitation for conversion/fraudulent misappropriation claims.  Specifically,

Capstone Credit maintains that, as alleged in the exhibits to the Complaint, 22 of those 68

separate assignments ($24,336,112.18 of the $51,409,647.79) fall outside of the three-year window and are time-barred.  Objection at 14-15; Complaint, Exhibit 1.

The Trustee denies that Count 4 is time-barred.  The parties agree that under New York's Civil Practice Laws and Rules, fraud claims are subject to a six-year limitations period (or two years from the time of discovery, whichever is longer), and conversion claims are subject to a three-year statute of limitations period, running from the date of the conversion.  *See* N.Y. C.P.L.R § 213(8) (fraud); § 214(3) (conversion).  The Trustee argues that the claim for "fraudulent misappropriation" sounds in fraud and, as such, it is subject to a six-year limitations period.  *See* Opposition at 11.  She maintains that, as pleaded, all of the transactions at issue in the Fourth Claim for Relief occurred within six years from the commencement of this Adversary Proceeding, and therefore her claim that Capstone Credit fraudulently misappropriated the Receivables is not time-barred.  *Id.*  She also contends that no portion of her claim that Capstone Credit converted the Receivables is time-barred because the three-year statute of limitations for conversion was tolled under the continuous wrong doctrine.  *Id.* at 12.

Capstone Credit denies that the six-year statute of limitations is relevant because New York courts treat claims for "fraudulent misappropriation" as claims for conversion.  *See* Motion at 18.  The Court finds no merit to that contention, per se.  However, under New York law, in assessing the nature of a claim, courts look to the substance of an alleged claim, and do not rely solely upon the plaintiff's chosen label.  *See, e.g.*, *Alexander Condo. v. E. 49th St. Dev. II, LLC*, 60 Misc. 3d 1232(A) at *7, 110 N.Y.S.3d 510 (2018) (noting that certain fraudulent misappropriation claims were dismissed as duplicative of breach of contract claims, and further noting that such claims were "in essence" conversion claims and the plaintiff failed to make specific allegations of misrepresentations).  That rule holds true when determining the statute of

limitations applicable to a claim for relief.   "[T]he choice of applicable Statute of Limitations is

properly related to the remedy rather than to the theory of liability."   *Sears, Roebuck & Co. v.*

*Enco Assocs., Inc.*, 43 N.Y.2d 389, 394-95, 372 N.E.2d 555, 557 (1977); *see also Brick v.*

*Cohn-Hall-Marx Co.*, 276 N.Y. 259, 264, 11 N.E.2d 902, 904 (1937) ("To say that the complaint

is framed in fraud and not upon contract may be true in theory, but in applying the statute of

limitations we look for the reality, and the essence of the action and not its mere name.").   As a

consequence, "courts will not apply the fraud Statute of Limitations if the fraud allegation is only

incidental to the claim asserted; otherwise, fraud would be used as a means to litigate stale

claims."   *Kaufman v. Cohen*, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157, 165 (2003) (quoting

*Powers Mercantile Corp. v. Feinberg*, 109 A.D.2d 117, 120, 490 N.Y.S.2d 190, 192

(1985), *aff'd*, 67 N.Y.2d 981, 494 N.E.2d 106 (1986)).

       To state a cause of action for fraud, "a plaintiff must allege a representation of material

fact, the falsity of the representation, knowledge by the party making the representation that it

was false when made, justifiable reliance by the plaintiff and resulting injury."   *Id.*; *Sharmat v.*

*Gallen (In re Gallen)*, 559 B.R. 349, 356–57 (Bankr. S.D.N.Y. 2016) (stating that, under New

York law, the elements of a claim for common law fraud are: "(1) a misrepresentation,

(2) fraudulent intent, or scienter, (3) intent to induce reliance, (4) justifiable reliance and

(5) damage").   In support of the Complaint, the Trustee does not allege an affirmative

misrepresentation by Capstone Credit—or any of the remaining elements of a claim for fraud.

At most, she alleges that the Debtor transferred funds to Capstone Credit without Court approval,

and that Capstone Credit secretly accepted such funds.   *See* Complaint, ¶¶ 24-26; 40-43; 49-50;

58-59.   Thus, her fraud allegation against Capstone Credit in Count 4 is at most "incidental" to

the conversion claim and cannot serve to expand the otherwise applicable three-year statute of

limitations.  *See Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*, 73 A.D.3d 581,

582, 905 N.Y.S.2d 8, 10 (2010) (noting that certain claims for "wrongful transfers of

development rights" sounded in conversion, and that there was "no viable fraud claim based on

affirmative misrepresentation").  Moreover, the Trustee's assertions to the contrary

notwithstanding, under New York law, the "continuing wrong" doctrine does not apply to claims

for conversion.  *See King v. Fox*, 28 F. App'x 95, 98 (2d Cir. 2002) (refusing to extend the statute

of limitations for a conversion claim, in part, because "the New York Court of Appeals [has]

limited the doctrine of continuing tort to claims of trespass, excluding those of conversion")

(citing *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 488, 448 N.E.2d 1324, 1327 (1983)); *Parks

v. ABC, Inc.*, No. 06 CIV. 1364 (DAB), 2008 WL 205205, at *5 (S.D.N.Y. Jan. 24,

2008), *aff'd*, 341 F. App'x 737 (2d Cir. 2009) ("Under New York law, the three-year statute of

limitations on a conversion claim begins to run at the time of conversion, and there is no

continuing wrong such that every new act that might constitute conversion would restart the

limitations period.") (citation omitted); *Songbyrd, Inc. v. Estate of Grossman*, 23 F. Supp. 2d

219, 223 (N.D.N.Y. 1998), *aff'd*, 206 F.3d 172 (2d Cir. 2000) ("Conversion is not a continuing

wrong for which every new act that might constitute conversion restarts a new limitations

period."); *Tinker v. Abrams*, 640 F. Supp. 229, 232 (S.D.N.Y. 1986) (noting that "New York law

does not recognize conversion as a continuing wrong").  The Court grants the Motion to dismiss

Count 4 on statute of limitations grounds regarding the alleged assignments occurring more than

three years before the filing of Complaint, or before August 19, 2017.[16]

---

[16]    In a footnote, the Trustee has alleged that she "might also argue" that Capstone Credit is estopped from raising
any statute of limitations defense under section 17-103(4)(b) of the New York General Obligations Law.
*See* Opposition at 12, n.5; N.Y. Gen. Oblig. Law § 17-103 (McKinney) (stating that "[t]his section . . . does not
affect the power of the court to find that by reason of conduct of the party to be charged it is inequitable to permit
him to interpose the defense of the statute of limitation").  However, the Trustee does not so argue, and nor does she
provide any basis for the applicability of this section.  In the same footnote, she states that she "might argue" that
she has "the right to waive the tort of conversion and recover in assumpsit and obtain the longer six-year period of

**Failure to State a Claim for Relief**

The Court now considers whether the Trustee has alleged claims for relief in support of Counts 2-5 of the Complaint.

Second and Third Claims for Relief

As noted above with respect to the statute of limitations analysis of the Second Claim for Relief, the Court finds that the Trustee must proceed under section 549 of the Bankruptcy Code, rather than section 362, to recover property voluntarily transferred by the Debtor after the Petition Date. The same reasoning applies with equal force to the Third Claim for Relief, which seeks avoidance and recovery of the Post-Conversion Assignments, as it also deals solely with voluntary post-petition transfers of the Debtor to Capstone Credit.

Section 549 of the Bankruptcy Code provides that:

> [T]he trustee may avoid a transfer of property of the estate—
>     (1) that occurs after the commencement of the case; and
>     (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
>         (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). In the Motion, the Defendants argue that the Second and Third Claims for Relief cannot state claims for relief under section of the Bankruptcy Code 549 because, pursuant to the terms of the Sales Representative Agreement, the Receivables belonged to Capstone Capital, not the Debtor. Thus, they say that the assignments of the Receivables were not transfers of "property of the estate." Motion at 16-18. In response, the Trustee argues that from the beginning of the Chapter 11 Case the parties sought to treat the Defendants as secured

---

limitations applicable to assumpsit under the old and established rule for that election under New York law." Opposition at 12, n.5 (citing *Lockwood v. Bull*, 1823 WL 1862 (N.Y. Sup. Ct. 1823)). However, as with her reference to the New York General Obligations Law, the Trustee does not explain how she meets any factors required to show recovery under this doctrine. And regardless of the applicability of assumpsit to this case, the Court declines to allow the Trustee to add an additional cause of action to her Complaint via a footnote in her Opposition.

creditors.  *See* Opposition at 14-15.  In particular, the Trustee notes that the form of the

assignments of the Receivables serve as strong evidence that the Debtor owned the Receivables,

as they were signed by the Debtor and provided:

> Pursuant to the *accounts receivable financing or factoring agreement between us*,
> and in accordance with the provisions, representations and warranties contained
> therein, we confirm the transfer and assignment to Capstone Credit, LLC of all our
> right, title and interest in and to the accounts receivable represented by invoices
> identified above, copies of which, or other appropriate documents, are attached
> hereto.  Capstone Credit, LLC shall have no obligation to perform, in any respect,
> any contracts relating to any of said accounts receivable.

Complaint, Exhibits 1 & 3 (emphasis added).  Further, the Trustee alleges that these assignments

were made in secret, out of the ordinary course of business, without Court approval, for no

consideration, and as part of a fraudulent scheme to misappropriate the Debtor's assets.

Opposition at 15.  In its Reply, the Defendants reiterate that the language of the Sales

Representative Agreement largely defeats the Trustee's allegations, as it provides that "[a]ll

Customer receivables shall be and remain the sole property of Capstone."  *See* Reply at 3.

Further, the Defendants argue that the form of the assignments of the Receivables is not

dispositive, as the assignments are "simply the tool by which the Debtor forwarded payments it

received pursuant to the terms of the [Sales Representative Agreement]" and to allow the Trustee

to "leverage" this language would be to put "form over substance." *Id.* at 4.  With regard to the

Trustee's allegations of secrecy, the Defendants note that the Sales Representative Agreement

was disclosed to the Court at the outset of the case, and therefore the Trustee cannot claim that

actions taken by the Debtor to adhere to its terms were made in secret.  *Id.* at 5.

The Trustee counters, however, that the Defendants' "entire reply rests on whether the

[Sales Representative Agreement] establishes, as a matter of law, that Capstone Capital owns the

Costco accounts receivable . . . and that the [Sales Representative Agreement] is not a financing

device which required perfection as against third parties." Surreply at 1.  She asserts that the

Sales Representative Agreement "can and should be construed as creating an agreement for the

sale of future receivables." *Id.* at 2.  She argues that, by application of section 9-318(b) of the

Uniform Commercial Code, the Debtor retains an interest in any transferred Receivables due to

the fact that Capstone Capital's interests in the Receivables were unperfected at the time of

transfer.  Surreply at 2.

While the final interpretation of the Sales Representative Agreement will doubtless prove

to be a crucial issue in this case, it is not a necessary determination in the context of ruling on the

Motion.  Even if the Defendants are correct, and the Sales Representative Agreement establishes

that certain receivables were owned by Capstone Capital, rather than serving as a financing

device between the parties, this does not establish as a matter of law that the actual Receivables

at issue in the Complaint were: (1) the same receivables referenced in the Sales Representative

Agreement; and (2) properly transferred by the Debtor to Capstone Capital.  For instance,

although the Sales Representative Agreement provides that "[a]ll Customer receivables shall be

and remain the sole property of Capstone [Capital]," the exact scope of such referenced

receivables has not been established at this time and raises a genuine issue of fact.  Further

muddying the waters, although all the Receivables at issue in the Complaint were transferred to

Capstone Credit, the Sales Representative Agreement is solely between the Debtor and Capstone

Capital.  Additionally, and as pointed out by the Trustee, when transferring the Receivables the

Debtor stated that they were transferred "[p]ursuant to the accounts receivable financing or

factoring agreement between [the Debtor and Capstone Credit], and in accordance with the

provisions, representations and warranties contained therein . . . ."  Complaint, Exhibits 1 & 3.

In a context where it has not been established as a matter of law that the Receivables were in fact

the exact same ones referenced in the Sales Representative Agreement, this language raises a genuine issue of fact as to the ownership of such Receivables and the parties' intent with regard to the assignment language.

In addition, even if the Court were to find that the Sales Representative Agreement unequivocally addresses the Receivables at issue in this case, the language of this agreement does not resolve the timing of any alleged transfer of the Receivables. The Sales Representative Agreement states that "[a]ll Customer receivables shall be and remain the sole property of Capstone [Capital]." Sales Representative Agreement, 4(c). The Defendants allege that this language establishes beyond all doubt that the Receivables belonged to Capstone Capital at the time of the signing of the Sales Representative Agreement. *See* Reply at 6. In contrast, the Trustee argues that this provision "can and should be construed as creating an agreement for the sale of *future* receivables." Surreply at 2 (emphasis added). On its face, it is unclear whether the cited language even effectuates a transfer of the Receivables, let alone whether it establishes the timing of such transfer(s). As a consequence, the proper interpretation of section 4(a) of the Sales Representative Agreement is a question of fact. *See Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) ("A court should construe a contract as a matter of law only if the contract is unambiguous on its face.") (citing *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)).

The Court denies the Motion to dismiss the Second and Third Claims for Relief pursuant to Rule 12(b)(6), and finds that the Trustee has adequately pled "a transfer of property of the estate . . . that occur[ed] after the commencement of the case . . . that [was] not authorized under [the Bankruptcy Code] or by the court." 11 U.S.C. § 549(a).

<u>Fourth Claim for Relief</u>

26

As noted above, the Trustee has failed to allege the elements of common law fraud in support of the Fourth Claim for Relief, and therefore the Court dismisses this count to the extent the Trustee seeks recovery on this ground.  However, the Trustee also alleges that the assignment of the Receivables constituted a conversion of the Debtor's property.  The Court turns to this claim below.

In New York, conversion "is the unauthorized 'exercise of dominion over or interference with' a specific identifiable piece of property in defiance of the owner's rights."  *Petty v. Barnes*, 70 A.D.3d 661, 662, 894 N.Y.S.2d 85, 87 (2010) (citation omitted); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) ("Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." (citing *Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996))); *Luroros v. Cyr*, 175 S. Supp. 2d 497, 515 (S.D.N.Y. 2001) (explaining that conversion "is the unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property" (citation omitted)).  To state a claim for conversion, a plaintiff must plead that: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *See Kirschner v. Bennett*, 648 F.Supp.2d 525, 540 (S.D.N.Y. 2009) (quotation marks and citation omitted)*; see also Channel Marine Sales, Inc. v. City of New York*, 75 A.D.3d 600, 601, 903 N.Y.S.2d 922, 923 (2010) (explaining that to establish a cause of action to recover damages for conversion, a plaintiff "must show legal ownership or an immediate superior right of possession to a specific

27

identifiable thing and must show that the defendant exercised an unauthorized dominion . . . to the exclusion of the plaintiff's rights" (quoting *Messiah's Covenant Cmty. Church v. Weinbaum*, 74 A.D.3d 916, 919, 905 N.Y.S.2d 209, 212 (2010))).

The Trustee does not provide an analysis of her claim for conversion in her Opposition. As with the Second and Third Claims for Relief, Capstone Credit argues that the Trustee has not sufficiently alleged a claim under the Fourth Claim for Relief on the basis that the Trustee has not shown how the Debtor had "legal ownership or an immediate right of possession in the receivables at issue given the terms of the [Sales Representative Agreement]." Reply at 5.

For the same reasons articulated above, the Court declines to dismiss the Trustee's conversion claim in the Fourth Claim for Relief, subject to the associated three-year statute of limitations. The Trustee has adequately alleged that the Receivables were owned by the Debtor, and that upon the transfer of the Receivables, Capstone Credit exercised "unauthorized dominion" over such Receivables. *See Kirschner v. Bennett*, 648 F.Supp.2d at 540 (listing the elements of a conversion claim under New York state law).

Fifth Claim for Relief

In her Fifth Claim for Relief, the Trustee asserts that "Capstone Capital and Capstone Credit provided substantial assistance and substantially contributed to the fraud and conversion perpetrated by the Debtor's officers, directors, managers and employees by the unauthorized, illegal and fraudulent transfers and misappropriations of property of the estate effected by the Post-Petition Assignments of Receivable [sic] and Post Conversion Assignments of Receivables by financing the operations of On Five and Liaison Apparel." Complaint ¶ 63. Additionally, the Trustee alleges that "Capstone Capital aided and abetted On Five's and Liaison Apparel's

diversions and misappropriations for its own benefit." *Id.* ¶ 62.  The Court examines these allegations below.

To state an aiding and abetting claim, a plaintiff must plead "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer." *Chemtex, LLC v. St. Anthony Enterprises, Inc.* 490 F.Supp.2d 536, 546 (S.D.N.Y. 2007).  Accordingly, the elements of an aiding-and-abetting-fraud claim brought under New York law are: (1) an underlying fraud; (2) the defendant's actual knowledge of the fraud; and (3) the defendant's substantial assistance to the fraud.  *Silvercreek Management, Inc. v. Citigroup, Inc*., 346 F. Supp. 3d 473, 482 (S.D.N.Y. 2018) (citing *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014)); *see also Oster v. Kirschner*, 77 A.D.3d 51, 55, 905 N.Y.S.2d 69, 72 (2010) ("A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance.").  Similarly, "[a]iding and abetting conversion requires the existence of a conversion by the primary tortfeasor, actual knowledge, and substantial assistance."  *William Doyle Galleries, Inc. v. Stettner*, 167 A.D.3d 501, 505, 91 N.Y.S.3d 13, 18 (2018); *see also Calcutti v. SBU, Inc*., 273 F. Supp. 2d 488, 493 (S.D.N.Y. 2003) ("In order to state a claim . . . for aiding and abetting the alleged common law conversion [the plaintiff] . . . must allege: (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation.") (citations omitted).

### *Aiding and Abetting Fraud*

Therefore, to establish a claim for aiding and abetting fraud, the Trustee must first establish the "existence of a violation by the primary wrongdoer."  *Chemtex*, 490 F.Supp.2d at

546.  In the Opposition, the Trustee states that the "primary violation" at issue in the Fifth Claim

for Relief is the assignment of the Receivables to Capstone Credit.  Opposition at 18.  In

response, the Defendants argue that, according to the terms of the Sales Representative

Agreement, the Receivables were never property of the Debtor, and therefore "there is no

underlying violation that was committed that Defendants could have aided and abetted."  Reply

at 6.

As noted above, a claim for fraud must include a misrepresentation.  *In re Gallen*, 559

B.R. at 356–57 (Bankr. S.D.N.Y. 2016) (stating that, under New York law, the elements of a

claim for common law fraud are: "(1) a misrepresentation, (2) fraudulent intent, or scienter,

(3) intent to induce reliance, (4) justifiable reliance and (5) damage").  However, the Trustee has

not alleged any misrepresentations of fact by On Five, Liaison Apparel, or "the Debtor's officers,

directors, managers and employees" *with regard to the alleged underlying violation*—the

assignment of receivables to Capstone Credit.  In fact, the only party alleged to have made an

affirmative misrepresentation on this topic is the Debtor, as "[c]ontrary to the statements

contained in each of the identical forms used for the [Post-Petition Assignments] and the

[Post-Conversion Assignments], the Debtor did not have any written agreement with Capstone

Credit that was in effect or approved by the Bankruptcy Court at the time the [Post-Conversion

Assignments] were executed."  Complaint ¶ 24.  However, no party is alleged to have justifiably

relied upon such statements of the Debtor, or to have suffered any damages on that account.

Therefore, these alleged misstatements by the Debtor cannot form the basis of an underlying act

of fraud.  *See Gallen*, 559 B.R. at 356-57.  As a consequence, the Court dismisses the Fifth

Claim for Relief to the extent it alleges that the Defendants aided and abetted fraud.

*Aiding and Abetting Conversion*

As noted above, the Trustee has alleged that the transfer of the Receivables constituted a conversion of the Debtor's assets.  Therefore, to adequately allege that the Defendants aided and abetted such conversion, the Trustee must also show "knowledge of this violation on the part of the aider and abettor; and . . . substantial assistance by the aider and abettor in the achievement of the primary violation." *Calcutti*, 273 F. Supp. 2d at 493.  With regard to Capstone Capital, the Complaint does not contain any allegations that it had knowledge of the underlying violation of the transfer of the Receivables, and it also does not allege any substantial assistance provided by Capstone Capital in such transfer.  Therefore, the Court dismisses the Fifth Claim for Relief to the extent that it alleges that Capstone Capital aided and abetted conversion.

With regard to Capstone Credit, however, the Trustee has alleged that it both received and kept the transferred Receivables.  As a consequence, the Trustee has adequately asserted that Capstone Credit had knowledge of the Debtor's transfer of the Receivables, and that it substantially assisted in such transfer.  Therefore, the Court declines to dismiss the Fifth Claim for Relief as to Capstone Credit's alleged aiding and abetting of conversion.

## CONCLUSION

Based on the foregoing, the Court finds that:

(i)     the Motion is denied as to the First Claim for Relief to the extent that the Trustee seeks relief pursuant to section 362 of the Bankruptcy Code, but the Court dismisses the First Claim for Relief to the extent that she seeks recovery under section 549 of the Bankruptcy Code, without leave to replead;

(ii)    the Motion is denied as to the Second and Third Claims for Relief to the extent that the Trustee seeks relief pursuant to section 549 of the Bankruptcy Code, but the Court dismisses such claims to the extent that the Trustee seeks relief pursuant to section 362 of the Bankruptcy Code, without leave to replead;

(iii)   the Motion is denied as to the Fourth Claim for Relief, but the Court declines to extend the statute of limitation to any Receivables transferred before August 19, 2017; and

(iv)    the Motion is denied as to the Fifth Claim for Relief to the extent that the Trustee seeks recovery against Capstone Credit for aiding and abetting conversion, but the Court dismisses this claim to the extent that the Trustee seeks recovery against Capstone Capital, or against either Defendant for aiding or abetting fraud, with leave to replead.

IT IS SO ORDERED.

Dated: February 3, 2021
       New York, NY

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge